941 A.2d 634 (2008)
398 N.J. Super. 247
STATE of New Jersey, Plaintiff-Respondent
v.
Yusef ALLEN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 4, 2008.
Decided March 4, 2008.
*635 Yvonne Smith Segars, Public Defender, attorney for appellant (Thomas Menchin, Designated Counsel, on the brief).
Theodore J. Romankow, Union County Prosecutor, attorney for respondent (Sara B. Liebman, Assistant Prosecutor, of counsel and on the brief).
Appellant filed a pro se supplemental brief.
Before Judges STERN, A.A. RODRIGUEZ and C.L. MINIMAN.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant appeals from an order, entered on September 20, 2005, denying his petition for post-conviction relief. We remand for further proceedings.
Defendant was convicted by a jury of murder, N.J.S.A. 2C:11-3a(1) and (2); possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a; and unlawful possession of a firearm, N.J.S.A. 2C:39-5b. The proofs presented at trial are detailed in our published opinion and need not be set out herein. State v. Allen, 337 N.J.Super. 259, 766 A.2d 1168 (App.Div.2001). On his direct appeal, we affirmed the convictions and sentence of life imprisonment, but vacated the 85% parole ineligibility term imposed under the No Early Release Act (NERA), and remanded to the Law Division for imposition of a sentence of life imprisonment with thirty years to be served before parole eligibility. Defendant's subsequent petition for certification was denied. State v. Allen, 171 N.J. 43, 791 A.2d 221 (2002).
Defendant thereafter petitioned for post-conviction relief (PCR). On this appeal, defendant argues that his petition was erroneously denied and that he received ineffective assistance from trial, appellate and PCR counsel. We address the only two contentions of concern to us, which warrant the remand.
At the PCR hearing, counsel argued that defendant did not receive a fair trial because of prosecutorial misconduct. PCR counsel further argued that trial counsel's failure to accept either of two offers made by the trial judge to grant a mistrial amounted to ineffective assistance.[1] Counsel also argued that an affidavit obtained from John Korman constituted newly discovered evidence, warranting a new trial.
In his affidavit, Korman stated that, although he initially told police that he was not in the area at the time of the shooting, he was certain that defendant was not the person who shot the victim. The affidavit stated:
1. I am [] presently confined at New Jersey State Prison, in the City of Trenton, in the County of Mercer.
2. On October 15, 1997, at approximately 6:20 a.m., I was in the City of Plainfield, New Jersey, at the location of Prescott Place and West Third Street. While I was at this location I witnessed the shooting of Mr. Lannie Silver.
3. The person I saw shoot Lannie Silver was a light skinned black male, *636 who appeared to be about 20 years old. He pulled the gun from his waist band and shot Mr. Silver a number of times. I heard about four or five shots.
4. A few days later I was picked up by the Plainfield police and questioned concerning the shooting death of Mr. Lannie Silver. I told the police that I was not at Prescott Place and West Third Street on the night Mr. Silver was shot.
5. I was also forced to appear in court concerning the shooting death of Lannie Silver. While I was in court I saw the man who was on trial for the murder of Lannie Silver, who I now know is Mr. Yusef Allen, and I knew immediately that he was not the man who shot Mr. Silver. I did not say anything because I did not want to get involved in this case.
6. Not telling the truth from the beginning and letting an innocent man be convicted for a crime he did not commit has been bothering me for a long time. I was afraid to come forth before now because I had told the police I was not there the night the shooting occurred, and I did not want the police to involve me in this case.[2]
PCR counsel added that Korman had been precluded from testifying during the trial by his own attorney as a result of his then pending homicide prosecution, and that his affidavit confirmed his willingness to do so now.
A report of an interview with Korman conducted by an investigator from the Public Defender's Office on December 15, 2003, gave further background regarding the affidavit:
According to John Korman, he was standing about 20 feet from Silver when a light skinned black male pulled a gun from his waistband and shot Silver four or five times. I asked Korman if he knew the shooter, he said that he did not. I asked if he thought he could pick the shooter out if his picture was shown to him in a grouping of photos. Korman responded that he was pretty sure that he could identify the shooter if he saw him again.
According to John Korman, he was in the Union County Jail at the time of Yusef Allen's trial, a prosecutor's detective brought him from the jail to a holding cell adjacent to the court room where the trial was being held. Then when a young black female was called to testify he (Korman) was moved to a seat in the court room. During this young lady's testimony the prosecutor asked her if she saw the man she knew as John in the court room. She immediately pointed to John Korman and said that he was the man. While this was going on John Korman said that he got a very good look at the man on trial and he was not the man who Korman saw shoot Lannie Silver.
Korman said nothing at the time or during prior interviews with the Plainfield Police regarding this murder, because he did not want to be involved. However, over time it bothered him a great deal and finally he decided that he wanted to clear his mind and he prepared the affidavit. I asked Mr. Korman if he had seen Lannie Silver with *637 anyone else just prior to the shooting, he said that he did not. I asked if he had seen Lannie drive his car to Prescott Place and park it there[;] again he said that he had not seen this. I asked if he had seen Lannie with a black female just prior to the shooting and again he said, "No".
According to John Korman, this investigator is the first person to contact him regarding his affidavit. No other investigators, detectives, or attorneys have contacted him in an attempt to verify its contents. I kept the door open for a follow up interview and the possibility of taking a statement from him in the future.
The PCR judge, who tried the case, rendered an oral opinion, and concluded that defendant was precluded from raising the arguments concerning prosecutorial misconduct because we addressed the issue on direct appeal. The judge also found that trial counsel made a strategic decision to decline his offer to grant a mistrial.[3]
The judge also held that Korman's affidavit did not meet the standard for newly discovered evidence because it was unreliable and Korman was known to the defense at the time of trial. According to the judge:
The real world is as follows: Your client is living in a place he doesn't like to be in, State Prison, which is a very bad place to live in. Mr. Korman lives there. That doesn't mean they are bunk mates, but in the same building, Trenton State, where murderers of our state go. It is a surprising thing that during the course of being there for four, five, six years Mr. Korman now comes forward and said I would have testified to something and I know he wasn't there that date and time.
. . . .
Now, Mr. Korman might have given an affidavit to that effect two years ago. Does it make a difference? I don't think so. Mr. Korman's credibility is, I believe, nonexistent in this particular case. He would stand before a Court as a convicted murderer who has been living in the same dormitory or area as your client for the last five or six years. That prong of it being newly discovered, his credibility is totally lacking.
Secondly, it is not a newly discovered person. I looked at my notes today and my notes show he was brought into court by me on behalf of Mr. Norton so that a witness could be asked do you recognize anybody in the room and he was identified as being in the area. That's all. Mr. Norton knew he was there. Whether or not Mr. Norton was permitted to talk to him, we don't know. It is not in our record. You want to assume he was not, assume he was not. If you want to assume he was, you can assume he was. The record is totally barren of that.
Even if he was, do you really expect him, Mr. Korman, to come forward and testify, as you say, about facts at that time when he was facing murder? Probably not. That doesn't make him believable now and that doesn't make it newly discoverable now.
*638 Finally, the judge held that trial counsel's failure to call an expert regarding the effects of drug use was not ineffective assistance as the subject was not beyond the realm of knowledge of the average juror.
We remand for an evidentiary hearing concerning the mistrial decisions and the Korman affidavit.
"[I]n order to sustain a claim of ineffective assistance of counsel, two separate elements must coalesce: a defendant must prove an objectively deficient performance by defense counsel, and that such deficient performance so inured to the defendant's prejudice that it is reasonably probable that the result would be altered." State v. Allegro, 193 N.J. 352, 366, 939 A.2d 754 (2008). Stated differently, the defendant must "identify specific acts or omissions that are outside the `wide range of reasonable professional assistance' and . . . show prejudice by demonstrating `a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Jack, 144 N.J. 240, 249, 676 A.2d 545 (1996) (quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984)) (internal quotation omitted).
Accordingly, when analyzing whether counsel's representation was deficient, courts "must be highly deferential" in their evaluation of counsel's performance, and avoid evaluating the performance with the "distorted effects of hindsight." State v. Norman, 151 N.J. 5, 37, 697 A.2d 511 (1997) (quoting Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694). Further, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." State v. Arthur, 184 N.J. 307, 319, 877 A.2d 1183 (2005) (quoting Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694-95) (internal quotation omitted). Thus, counsel is presumed to have made all significant decisions in the "exercise of reasonable professional judgment." Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2064-66, 80 L.Ed.2d at 694-95.[4]
Moreover, even if the defendant can demonstrate that counsel's error was professionally unreasonable, the defendant still has "the burden of showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Arthur, supra, 184 N.J. at 319, 877 A.2d 1183 (quoting Strickland, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698).
Defendant specifically asserts that trial counsel provided ineffective assistance in making the strategic decision to decline the trial court's offer for a mistrial. He points to the trial judge's offers to grant a mistrial.[5] Defendant further asserts that *639 trial counsel's decision to forego a mistrial is inconsistent with counsel's objections throughout the trial concerning the impact of the prosecutor's misconduct. Moreover, defendant argues that when the judge remarked that the case was "on the verge of a mistrial," counsel answered that defendant did not have "unlimited funds . . . to correct the mistakes of the Prosecutor," which was not a reasonable basis on which to decline a mistrial necessary to avoid both the prosecutorial misconduct and a conviction.
The State contends that, after being afforded the option to move for a mistrial, counsel discussed the situation with defendant for "15-20 minutes"[6] and determined that, from a "tactical standpoint," it would not be in his best interests to pursue that route. Counsel expressly stated that "[i]f I thought it was in my client's best interest, I'd ask for a mistrial right now and start again next week." Although he did not disclose the specific tactical reasoning behind his decision, counsel did mention that, if a mistrial were granted, the State might be reluctant to call witness Whitfield again as a witness. He added that "economics has nothing to do with it." Counsel had conducted an extensive cross-examination of Whitfield, impeaching her credibility and drawing out inconsistencies between her testimony and that of another witness, Waller. Moreover, the trial judge addressed defendant to make sure that he fully agreed with counsel's report declining the mistrial option.
A judge's offer of a mistrial usually follows some serious act of prejudice to the defendant, and we believe that defendant is entitled to develop what counsel said to him and recommended, and the reasons therefor, prior to declining the mistrial. While the mistrial issue could have been raised on the direct appeal, it was not until the PCR proceedings that the record contained any question about defendant's lack of understanding, or reasons for concurrence, in the expressed agreement not to *640 pursue the mistrial. See State v. Preciose, 129 N.J. 451, 459-64, 476-78, 609 A.2d 1280 (1992).[7] Therefore, we can find no procedural bar to consideration of this issue. Id. at 476-78, 609 A.2d 1280; see also R. 3:22-4. On the other hand, the fact defendant raised issues concerning the lack of discovery, Brady violation, and offer of mistrial on the direct appeal does not preclude consideration of the present contention focused on why defense counsel declined, or recommended that defendant decline, the mistrial. See R. 3:22-5.[8]See also Preciose, supra, 129. N.J. at 474-78, 609 A.2d 1280. In any event, the defendant has shown enough to warrant development of the facts at an evidentiary hearing before they are tested against the two-prong Strickland test. See State v. Cummings, 321 N.J.Super. 154, 164, 728 A.2d 307 (App.Div.), certif. denied, 162 N.J. 199, 743 A.2d 852 (1999).
In sum, we are satisfied that the untested statement of counsel that "economics has nothing to do with" the decision not to pursue the mistrial is not a sufficient response by itself to defendant's present contention to the contrary. The issue as framed, in the context of ineffective assistance of counsel, warrants further development, and defendant is entitled to test the assertion in an evidentiary proceeding.
Defendant also claims that Korman should have been called as a defense witness at trial. As already noted, during the PCR hearing, defendant produced an affidavit from Korman in which he admitted being present when the victim was shot and that defendant was not the shooter. His stated rationale for lying to police is that he did not want to become involved in the case because he was already being prosecuted for capital murder. The record reflects that Korman was brought into the courtroom and identified by a witness as having been with the victim on the day of the shooting, but was never called to testify by either party.[9] Irrespective of any claim of ineffective assistance of counsel, PCR counsel also argued that Korman's *641 affidavit presented newly discovered evidence,
To obtain a new trial on the grounds of newly discovered evidence, "the new evidence must be (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the original trial and not discoverable by reasonable diligence beforehand; and (3) of the sort which would probably change the jury's verdict if a new trial was granted." State v. Carter, 85 N.J. 300, 314, 426 A.2d 501 (1981). The absence of any one of these elements warrants denial of the motion. State v. Johnson, 34 N.J. at 212, 223, 168 A.2d 1 (1961).
As already noted, the judge rejected defendant's newly discovered evidence argument because Korman was known to the defense during trial and Korman's testimony completely lacked credibility. The judge acknowledged it was unexpected that he would "come forward and testify" while facing a murder charge, but noted that Korman was convicted of murder and was incarcerated at the same correctional facility as defendant, which served neither to "make him believable now" or his testimony "newly discoverable."
We recognize that post conviction statements of persons who did not testify at trial, particularly when serving time at the same institution as the defendant, are "inherently suspect." State v. Robinson, 253 N.J.Super. 346, 367, 601 A.2d 1162 (App. Div.), certif. denied, 130 N.J. 6, 611 A.2d 646 (1992). However, Korman's post-judgment exculpatory statements to third parties, and confirmed by affidavit, must be tested for credibility and cannot be summarily rejected. See State v. Carter, supra, 85 N.J. at 314, 426 A.2d 501; State v. Cummings, supra, 321 N.J.Super. at 164, 728 A.2d 307; R. 1:6-6. See also State v. Robinson, supra, 253 N.J.Super. at 366-67, 601 A.2d 1162. Accordingly, we remand for an evidentiary hearing as to whether Korman's present statement warrants a new trial under the standard applicable, to motions for newly discovered evidence. In judging that issue, we do not preclude development of anything Korman said on prior occasions, especially to defendant's counsel, the prosecutor or others while the trial was in process, regarding being called to testify and for an assessment of credibility based thereon.
We find the other issues raised do not warrant discussion in a written opinion. R. 2:11-3(e)(2). The denial of PCR is reversed, and the matter is remanded for further proceedings on the petition, consistent with this opinion.
NOTES
[1] Trial counsel supplied an affidavit contending defendant was denied a fair trial. It concluded:

Yusef Allen, in my opinion, did not receive a fair trial and in 32 years of practice, including 250 trials and having handled very close to 7,000 criminal matters, this one single case stands out as a gross miscarriage of justice.
[2] The PCR record also contains an affidavit, executed in March 2004, by Dwayne Knight, an inmate paralegal at Trenton State Prison, stating that Korman informed him in October or November 2001 that "he was present the night Mr. Lannie Silver was killed [and] that Yusef Allen was not the person he saw shoot Mr. Silver." According to Knight, Korman willingly gave him his affidavit which was dated December 21, 2001, and subscribed before a notary public on January 4, 2002.
[3] The judge said:

I did what I had to do to stop him from doing things I thought was improper. I also offered to your client and his lawyer I think twice mistrials.
Now, you weren't here but we were in this room and I saw Mr. Norton [trial counsel] talk to your client and they were both confident of victory, Counsel. That's why they said no. They had been doing a lot of damage to credibility they thought of these witnesses.
[4] On the other hand, "when the level of counsel's participation makes the idea of a fair trial a nullity, prejudice need not be shown, it is presumed." State v. Jack, 144 N.J. at 249, 676 A.2d 545.
[5] The prosecutor had not provided discovery concerning witness Whitfield's "multiple [head] trauma and concussions." The judge considered this to be "a Brady violation" because "it affected her memory." On another occasion defense counsel complained that he had to object to too many improper questions so that it made it look like the defense was trying to hide the truth. On yet another occasion witness Waller indicated she bought drugs from defendant, even though the prosecutor was instructed not to develop that fact when developing why she was able to identify defendant.
[6] A significant colloquy with the court at trial is quoted in full:

THE COURT: I must add I think this is a Brady violation, Counsel. The lady clearly said that she told you and your investigator of the fact that she had had this injury. And further, that it affected her memory. That factor should have been disclosed to the defense. Now it came out, it came out only through a thorough cross-examination. It should have been disclosed by you very clearly.
I would say if the defense wished for a new trial, to throw out this jury and start again, given this, I would do that for you, Counsel. I understand the realities of economics, your client doesn't want to fund an entire new case, I understand that, but I think you should talk to him about this now before we go forward.
MR. NORTON: Judge, knowing that, based on my experience, believing that your Honor would actually seriously entertain that, we discussed that for 15 or 20 minutes and from a tacticaleconomics has nothing to do with it. I'm not going to disclose the tactical reasons. I feel that the State might not call this witness again. And the State, I also feel the State might handle this case a little more efficiently and effectively next time. I discussed this with Mr. Allen. I will not disclose tactical reasons, but I'll be quite clear, economics has nothing to do with it. If I thought it was in my client's best interest, I'd ask for a mistrial right now and start again next week.
THE COURT: You concur no mistrial be requested, right or wrong?
THE DEFENDANT: Yes.
THE COURT: I don't know about the discussions back and forth with your lawyer, but has he discussed these issues he talked to me about with you?
THE DEFENDANT: Yes.
THE COURT: You agree with the decision to go forward, not to ask for mistrial?
THE DEFENDANT: Yes.
[7] In his brief in support of his petition defendant wrote

Here, it is clear that the trial court was going to grant defendant a mistrial. However, trial counsel refused the mistrial after all the events that had transpired during trial that were prejudicial against the defendant. Trial counsel should have accepted the mistrial and started all over with a new jury. Defendant is aware that counsel stated that he had discussed the decision to refuse the mistrial with defendant, but defendant is not a lawyer and he only made the decision he made at counsel request. In other words, counsel knew how the prejudicial evidence that had seeped into the trial would harm defendant, although defendant had no idea of the prejudice he had suffered, Again, counsel should have accepted the mistrial and tried defendant's case in front of a new jury instead of letting a jury that had heard prejudicial evidence decide defendant's fate.
[8] Our opinion on the direct appeal rejected defendant's argument that reversal was warranted on these grounds. State v. Allen, 337 N.J.Super. at 267-70, 766 A.2d 1168. Part of our rationale was based on what was developed after the mistrial was rejected. In any event, the issue as framed on the direct appeal and as presented now in the context of ineffective assistance of counsel, are substantively different.
[9] At a side bar conference, defense counsel noted that "Mr. Korman has pending homicide charges with potential death penalty" and "[h]is interest or motive in testifying and cooperating with the State would be clearly relevant." The prosecutor indicated he wanted to call Korman to ask if he recognized the witness, but did not want to "subject him to being questioned about other material." Korman was not called as a witness, but was asked to walk past the jury box "so the jury [could] assess his height and get a closer appearance of him" in, light of questions asked of the witness.