**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0869-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILBERT HANNAH, a/k/a RABE,

    Defendant-Appellant.

_____

Argued November 14, 2019 - Decided November 27, 2019

Before Judges Whipple, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 93-08-1826.

Andrew Robert Burroughs, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Andrew Robert Burroughs, on the briefs).

Ednin D. Martinez, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Wilbert Hannah appeals from an August 21, 2018 order denying his petition for post-conviction relief (PCR). We affirm.

In a prior PCR appeal, we recounted the history of this matter:

> On June 7, 1993, Angel "Freddie" Salazar and Luis Flores, two drug dealers, were found dead in a vehicle parked on a street in Jersey City. Salazar, found in the driver's seat, was killed by a single bullet that had entered the left side of his head. Flores, seated in the back, had been shot four times with three bullets entering the right side of his head and the fourth entering his left shoulder. Defendant Wilbert "Rabb" Hannah was convicted of crimes arising from these two deaths.
>
> . . . .
>
> At trial, the State contended that defendant and William LaCue had killed Salazar and Flores. LaCue, who had reached a plea agreement with the State, testified that defendant and he were engaged in the sale of illegal drugs. According to LaCue, on the day in question, defendant approached him indicating that when men from New York delivered drugs, rather than pay for the drugs, they would rob and kill the men. When the two men arrived from New York in a vehicle, the passenger exited the front seat and sat behind the driver in the back seat. Defendant sat next to the driver, and LaCue sat next to the man in the back seat. Defendant directed the driver to another location where the vehicle was parked. According to LaCue, the men handed over the drugs, and defendant pulled out his gun and shot the driver twice in the head. LaCue admitted that he shot the back seat passenger twice.

A-0869-18T4

The medical evidence did not conform exactly to LaCue's testimony. Most significantly, the bullet killing Salazar, the driver, entered from the left side of his head, and thus the shot was unlikely to have been administered by a passenger seated to his right. Further, LaCue had given contradictory pretrial statements. In two pretrial statements, he said that he shot one victim and defendant shot the other. In another statement, he admitted to shooting both victims.

LaCue's testimony that defendant participated in the shooting was confirmed by defendant's girlfriend at the time, Hazel Forrester. She testified that on the night in question, defendant came to her apartment and she overheard him tell her sister Arlene that he had shot someone named "Fred." Defendant then came into her bedroom and told her that he had killed a man.

Defendant presented a different version of events. He testified that he went with LaCue and Maurice "Big Mo-T" Thomas to meet the car from New York. He testified that he went as a bodyguard for Thomas, although he was not armed with a weapon. According to defendant, the three men approached the vehicle that had arrived from New York, and a moment later he went across the street to the corner to talk to a woman while LaCue and Thomas remained by the car. He thereafter heard shots and ran. He contended that he fled to Florida, where he was arrested, because he had been told that "the Colombians [were] out to murder [him]" for the shooting.

Defendant was convicted by a jury of two counts of felony murder, N.J.S.A. 2C:11-3(a)(3); two counts of armed robbery, N.J.S.A. 2C:15-1; and one

3

count of possession of a handgun for unlawful purposes, N.J.S.A. 2C:39-4(a), arising from the deaths of Flores and Salazar. He was acquitted of two counts of knowing or purposeful murder. The trial court imposed an aggregate sentence of two consecutive life terms with sixty years of parole ineligibility.

The convictions and sentence were affirmed on appeal, State v. Hannah, No. A-5022-94 (App. Div. Dec. 11, 1997), and the Court denied certification. State v. Hannah, 153 N.J. 217 (1998). Defendant's first [PCR] petition . . . was denied by the trial court but remanded by us for an evidentiary hearing. State v. Hannah, No. A-6424-99 (App. Div. Jan. 31, 2002). After the evidentiary hearing was held, the trial court denied defendant's first petition . . . and we affirmed. State v. Hannah, No. A-6379-01 (App. Div. Nov. 7, 2003). The Court denied certification. State v. Hannah, 178 N.J. 453 (2004).

Defendant, appearing pro se, brought this second petition for post-conviction relief arguing that he was entitled to a new trial because the State had withheld evidence. According to defendant, his legal papers had been destroyed during a lockdown at the New Jersey State prison, and as a result, he obtained a court order to compel the prosecutor's office to provide him with copies of the contents of the discovery in his case. Among the materials he received in response to the order was a report from Investigator Charles Lee Redd. Defendant contends that this report had not been provided to the defense earlier. The report states that a pager with a telephone number listed to "Rabb" was found in the victim's car, and when the investigators called the number, Maurice "Big Mo-T" Thomas responded to the page. Defendant argues that this newly discovered evidence buttresses his defense that Thomas and not defendant

4

was the second person involved in the killings. Since this report was not provided earlier, defendant argues that he is entitled to a new trial.

[State v. Hannah, No. A-3788-07, slip op. at 1-5 (App. Div. June 19, 2009)].

We remanded and held the following:

In order to decide whether defendant is entitled to a new trial, an evidentiary hearing is necessary to determine whether a Brady[1] violation occurred and the pager is newly discovered evidence. If so, then further details about the pager need to be explored to determine its relevance to the facts of this case, and an analysis would have to [be] done by the trial court to determine if its discovery merits a new trial.

[Id. at 10].

Following the remand, a subsequent appeal ensued, whereby we reversed and remanded the matter for an evidentiary hearing before a second PCR judge because we determined the judge who heard the case was disqualified from doing so. State v. Hannah, No. A-5099-09, slip op. at 13 (App. Div. July 16, 2012).

After a three-day evidentiary hearing, the second PCR judge ultimately denied defendant's second petition. Defendant sought our review of the decision

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

and we affirmed in part, and reversed and remanded in part, for the following

reasons:

> PCR counsel argued there were two pagers. The first
> was found at the scene of the crime and listed on the
> Redd Report. The second, he argues, was found after
> the police discovered a piece of paper containing a
> pager number. PCR counsel argued the police called
> that number, and therefore, the pager belonging to that
> number was a second pager. The second pager,
> defendant argues, is the newly discovered evidence.
> In defendant's opinion, the second judge determined
> the Redd Report was not newly discovered evidence,
> but did not address whether the pager was newly
> discovered evidence. We agree. As such, although
> we affirm the PCR judge's determination there were
> no Brady violations, we are constrained to remand
> solely to address whether the pager was newly
> discovered evidence.
>
> [State v. Hannah, No. A-3515-14, slip op. at 4-5 (App.
> Div. May 12, 2017)].

Subsequent to the remand, the PCR judge found the pager was not newly

discovered evidence meriting a new trial and denied the petition. The judge

stated:

> [N]ewly discovered evidence must meet the following
> three prongs. One, it must be material and not merely
> cumulative, impeaching or contradictory. And,
> number two, it must have been discovered after the
> trial, and not discoverable by reasonable diligence
> beforehand. And, number three, it must be evidence
> that would probably change the jury's verdict if a new
> trial were granted. . . .

6

. . . .

[W]hile there's vague memory apparently trial counsel knew . . . [the] beeper number was written on a piece of paper. . . . I'll agree with defense counsel, this is the one and only piece of paper with . . . a phone number on it that I'm aware of.

. . . .

Additionally, [defendant] testified . . . he went through the Redd [R]eport, the Valdora reports, and he indicated to me that he didn't have them at the time, and even if he had them, nothing in there would indicate to him that there was any piece of paper with any phone number, or any pager out there. So, I . . . accept his testimony. However, [defendant] testified . . . that . . . Thomas was paged by the police, and he was aware of this fact throughout the trial process.

. . . .

He also testified that he was not aware that the phone number was found in the victim's car or [i]n someone's pocket.

[Defendant] is very involved in this case . . . . I can't imagine that he didn't hear the mother of . . . Thomas[, Mary Jones] testif[y] that she had a conversation with her son, and that . . . Thomas[] was afraid that his beeper number was found in the victim's car, and that the police would get his name and his telephone number from that. So, I can't imagine he wouldn't have heard that . . . .

Specifically on the trial . . . transcript of September 30, 1994, at the <u>Rule</u> 104 hearing, . . . Jones . . . testified and . . . discussed the issue of . . .

7

Thomas'[s] beeper number being in the possession of the police, . . . and her son's concern that the police had found his beeper number at the scene. Those are the facts that I will find.

So, now I need to decide whether this is . . . new evidence, pursuant to the test. So, number one, it must be material and not really cumulative, impeaching or contradictory. I would agree that the telephone number on the piece of paper is material to the case, and there's a beeper that was called, that someone answered, that . . . defendant intended to say . . . was the real person who committed this crime, and not me. So . . . it's material.

Number two, it must have been discovered after the trial, and not discoverable by reasonable diligence beforehand. I can't find that . . . [defendant] has met that prong of the test. I've already reviewed [prior counsel's] testimony that he thinks that he heard about it, and . . . Jones testified at [a] 104 hearing in the midst of the trial about the telephone number, and it being discovered at the scene and the son being concerned. So, it must have been discovered after the trial, and not discoverable by reasonable diligence beforehand. So, did the prosecutor actually hand the piece of paper and say, here it is? No. But it was discoverable by . . . reasonable diligence beforehand, at least based upon the testimony that I have from [prior counsel] and from . . . Jones.

And, number three, it must be evidence that would probably change the jury's verdict if a new trial were granted. I frankly don't know that it would be evidence that would probably change the jury's verdict if a new trial were granted.

A-0869-18T4

[Defendant] presented his defense of third party guilt.  I understand lacking the piece of paper it, perhaps, limited him in some ways.  He didn't have . . . the beeper, he didn't have other things that he could have pursued, but just having the beeper, I don't know would probably change the jury's  verdict if a new trial were granted.  So, I'm not convinced in regard to that.  So, pursuant to <u>State v. Allen</u>,[2] if any of these elements are missing the motion must be denied.

I'm firmly convinced that element number two is missing, and I'm convinced that element number three is missing.  So, for those reasons I'm going to find that . . . the . . . telephone number on that piece of paper . . . is not newly discovered evidence.

On this appeal, defendant raises the following arguments:

THE INFORMATION CONTAINED IN THE REDD REPORT WAS NEWLY DISCOVERED EVIDENCE AND KNOWLEDGE OF ITS EXISTENCE BY THE DEFENSE COULD HAVE CHANGED THE OUTCOME OF THE TRIAL.

     1.    The PCR court was correct when it found the information in the Redd Report was material evidence.

     2.    As the information contained in the Redd Report was material and not available to the defense from other sources, the PCR court was wrong when it found the evidence was discoverable at the time of trial.

---

2  398 N.J. Super. 247 (App. Div. 2008).

A-0869-18T4

> 3.    The PCR court was wrong when it found the discovered evidence would not have changed the result of the trial.

I.

"Our standard of review is necessarily deferential to a PCR court's factual findings based on its review of . . . witness testimony. In such circumstances we will uphold the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013). "We must keep in mind that the purpose of post-conviction review in light of newly discovered evidence is to provide a safeguard in the system for those who are unjustly convicted of a crime." State v. Ways, 180 N.J. 171, 188 (2004). However, "if the trial court's conclusions are 'clearly mistaken or wide of the mark[,]' an appellate court must intervene to ensure the fairness of the proceeding." N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226-27 (2010) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

In Ways, the Court stated:

> To meet the standard for a new trial based on newly discovered evidence, defendant must show that the evidence is 1) material, and not "merely" cumulative, impeaching, or contradictory; 2) that the evidence was discovered after completion of the trial and was "not discoverable by reasonable diligence beforehand"; and

10

3) that the evidence "would probably change the jury's verdict if a new trial were granted." State v. Carter, 85 N.J. 300, 314 (1981). We have held that all three prongs of that test must be satisfied before a defendant will gain the relief of a new trial. Ibid. [(citations omitted)].

A jury verdict rendered after a fair trial should not be disturbed except for the clearest of reasons. Newly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial.

[180 N.J. 187-88].

A.

At the outset, we do not address defendant's agreement with the PCR judge's finding the Redd Report information regarding the pager Thomas answered was material evidence. We agree with the judge's findings.

Defendant asserts the PCR judge erred in determining he failed to meet prong two of Ways because his trial counsel testified under oath he did not recall or have the Redd Report in his file. Defendant alleges there was a concerted effort to disguise the fact Thomas responded to a page to a number found on a paper in Salazar's pocket because it was not mentioned in any other police report. He maintains the information in the Redd Report was not available in

any of the other police reports provided in discovery, Thomas's statement to police, or Jones' testimony.

In cases involving a claim of newly discovered evidence "the reviewing court must engage in a thorough, fact-sensitive analysis to determine whether the newly discovered evidence would probably make a difference to the jury." Ways, 180 N.J. at 191. The record does not support the PCR judge's finding defendant had prior knowledge of the information regarding the pager found in the Redd Report.

Indeed, because defendant knew he gave Thomas one of the pagers registered to his name, did not mean he knew police found the number to that pager in Salazar's pocket, used it to contact Thomas, and Thomas answered. At the PCR hearing, the State conceded there was nothing in Thomas's statement to police indicating he was paged from the number found in Salazar's pocket. Defendant had a copy of Thomas's statement to police noting they asked Thomas, "Alright ah and then that's a little bit later that's when we paged you, is that correct?" However, this question did not prove police contacted Thomas after discovering a pager number on a piece of paper found in Salazar's pocket.

The State's argument the information in the Redd Report was available through Jones's testimony also did not establish defendant had prior knowledge

A-0869-18T4

of the pager noted in the Redd report. Jones testified her son stated, "Ma, this kid, [LaCue] have just killed two drug suppliers, and I don't know what to do because I think the police have my name, I mean have my name and beeper number." This statement does not reveal police found the number in Salazar's pocket, called it, and reached Thomas. For these reasons, the PCR judge's finding the evidence was discoverable by reasonable diligence beforehand was not supported by the evidence in the record.

B.

Defendant also challenges the PCR judge's prong three findings. He claims if the jury had known Thomas responded to the number police found in the decedent's pocket, it would have found his third-party guilt defense credible, and acquitted him. Specifically, he argues "[t]he Redd Report and . . . Jones' testimony were inseparable; two pieces of evidence each dependent upon the other[,] . . . and had [he] been permitted to present all the exculpatory evidence to the jury, [it] would have rejected . . . LaCue's many falsehoods." He asserts the Redd Report revealed Thomas's possible involvement in the robbery and shooting, and Jones' testimony would have established Forrester conspired with Thomas to "set-up" defendant.

A-0869-18T4

We agree with the PCR judge the pager evidence would not change the verdict. Contrary to defendant's argument, Jones's testimony was inadmissible as a statement against interest or a statement by a co-conspirator.

N.J.R.E. 803(c)(25) posits a statement against interest "is admissible against an accused in a criminal action only if the accused was the declarant." Jones' testimony concerned statements attributed to Thomas, who was not the accused. Therefore, the statements were inadmissible.

The co-conspirator hearsay exception requires the statement to be "made at the time the party and the declarant were participating in a plan to commit a crime or civil wrong and the statement was made in furtherance of that plan." N.J.R.E. 803(b)(5). Even considering that police called the number found in Salazar's pocket and reached Thomas, this did not demonstrate a conspiracy between Thomas and LaCue to rob the victims, take the money, exclude defendant from the profits, and frame defendant for the murders. Defendant admitted he had multiple pagers registered to him, Thomas used the pagers, and the two were associates in the drug business. The substantial, credible evidence supported the PCR judge's conclusion the pager evidence would not have changed the verdict where the jury acquitted defendant of knowing and purposeful murder but concluded he participated in the felony murder.

A-0869-18T4

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0869-18T4