**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1388-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CARL HOLDREN,

     Defendant-Appellant.

_____

Submitted January 11, 2021 – Decided March 24, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 07-09-0125.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Debra G. Simms, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Carl Holdren appeals the denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. A jury convicted defendant of criminal racketeering, the murder of Michael Montgomery, the attempted murders of Keith Logan and Michael Stallworth, and other related crimes. The judge imposed an aggregate sentence of life imprisonment, plus forty years, subject to ninety-two and one-half years of parole ineligibility. We affirmed defendant's convictions and sentence. State v. Holdren, A-1056-14 (App. Div. Sept. 1, 2017). The Supreme Court denied certification. State v. Holdren, 232 N.J. 300 (2018).

Montgomery and Logan were both shot at close range in a parking lot in Long Branch on November 22, 2006, during the throes of a gang war; "Logan survived the shooting; Montgomery did not." Holdren, slip op. at 3–4. Based on phone calls intercepted pursuant to court-ordered wiretaps, police discovered that defendant also agreed to kill Stallworth, a member of a rival gang who had kidnapped and assaulted a member of defendant's gang. Id. at 4. Although defendant's gang hatched a plan to kill Stallworth by renting a car and obtaining a firearm destined for delivery to defendant, police foiled the plot before its purpose was accomplished. Id. at 4–5. We characterized the totality of the

evidence against defendant and one of his co-defendants, Valdo Thompson, who pled guilty, as "compelling." Id. at 2.

Defendant filed a timely PCR petition, alleging, among other things, that trial counsel provided ineffective assistance (IAC) by failing to "investigate essential witnesses." After the court appointed counsel, defendant filed a supplementary amended certification with exhibits that alleged specific examples of trial counsel's ineffective assistance, only two of which are preserved on appeal.

Specifically, defendant certified that he unsuccessfully sought to have counsel removed and replaced, met with counsel "a minimal amount of time," and had no meaningful discussion with counsel regarding "trial strategy." Defendant said he wanted counsel to call two witnesses at trial, Briana Robinson and Nichelle Dupree. Defendant attached copies of statements both gave to law enforcement days after the Long Branch shooting.

Robinson said she was outside with Dupree across the street from the site of the shooting. She noticed defendant arrive with another man who wore a mask over his face; defendant wore no face covering. Together with Dupree and another friend, Robinson crossed the street, and they began talking to defendant,

3

whom both knew. According to Robinson, defendant kept whispering to the masked man. When the masked man started shooting, everyone ran.

Dupree knew defendant "for a long time." He arrived at the scene with another man who wore a ski mask. Dupree said defendant "had a hoodie on and he had it tight, so you couldn't notice that it was him," but she recognized him and crossed the street to talk with him. Dupree said defendant and the man "looked suspicious," and the other man "was surprised that we were there and I knew [defendant's] name." Dupree said defendant "kept whispering in [the other man's] ear[.]" When she heard gunshots, Dupree ran with the others. Dupree claimed at one point that she did not actually see the shooting but only heard shots being fired. She never saw a gun in defendant's hand, and described defendant's reaction:

> I saw [defendant] look at his friend like he was shocked or something . . . it seemed like it wasn't meant for that to go down. . . . Back in the driveway . . . [defendant] was looking at the [shooter] and kept stepping back when he started shooting . . . [defendant] was looking at him like that wasn't supposed to happen . . . [defendant] was whispering to the shooter right before it happened.

Defendant also included a letter trial counsel sent him after sentencing in which the attorney responded directly to defendant's questions about the decision not to call Robinson and Dupree as witnesses.

> In reference to having the witnesses such as . . . Dupree or . . . Robinson appear on your behalf, the [S]tate should have brought those witnesses to testify as to the evidence. Remember, we do not have to prove anything as the defense. If I had called them to trial, I may never have been able to fully control what they would say. The mere fact that the [S]tate did not call them clearly shows to the jury that there was no witness putting a gun in your hand. The problem here was the [wiretaps]. You were [e]ffectively convicted by your own words as well as Mr. Thompson's words. The jury heard the telephonic conversations that you had in reference to gang activity, including the Long Branch shooting.

After considering oral argument, the PCR judge, who was not the trial judge, denied defendant's petition without an evidentiary hearing. We discuss the judge's oral decision below. This appeal followed.

Before us, defendant contends trial counsel provided ineffective assistance "due to inadequate consultation and/or not pursuing exculpatory witnesses." After examining the record and considering applicable legal standards, we disagree and affirm.

To establish a viable IAC claim, a defendant must establish both prongs of the test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984),

5

and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). He must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). As to this prong, "there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]' [and t]o rebut that strong presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" State v. Castagna, 187 N.J. 293, 314 (2006) (quoting Strickland, 466 U.S. at 689). "If counsel thoroughly investigates law and facts, considering all possible options, his or her trial strategy is 'virtually unchalleng[e]able.'" State v. Savage, 120 N.J. 594, 617 (1990) (quoting Strickland, 466 U.S. at 690–91).

Additionally, a defendant must prove he suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 687. A defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).

Our rules anticipate the need to hold an evidentiary hearing on PCR petitions "only upon the establishment of a prima facie case in support of post-

conviction relief[.]" R. 3:22-10(b). We review a PCR court's denial of an evidentiary hearing under an abuse of discretion standard. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157–58 (1997)).

On direct appeal, defendant challenged the trial court's denial of his motion to dismiss the indictment because of the prosecutor's alleged failure to provide exculpatory evidence to the grand jury, i.e., Robinson's and Dupree's statements. Holdren, slip op. at 9–10. In affirming that decision, we observed that "[d]uring a grand jury proceeding, the prosecutor must present any evidence that 'both directly negates the guilt of the accused and is clearly exculpatory.'" Id. at 10 (quoting State v. Saavedra, 222 N.J. 39, 63 (2015)). "We note[d] further that [defendant] was charged both as a principal and an accomplice in the murder, and that, even when the [witnesses'] formal statements are considered, they do not 'directly negate[]' his guilt." Id. at 11 (fourth alteration in original) (quoting Saavedra, 222 N.J. at 63).

In part, the PCR judge accepted the State's argument, reiterated now before us, that defendant's IAC claim premised on trial counsel's failure to call Robinson and Dupree as witnesses was procedurally barred. See R. 3:22-5

(holding that "[a] prior adjudication upon the merits of any ground for relief is conclusive" for PCR purposes). We disagree.

Initially, the onerous standard applicable to a motion to dismiss an indictment for failing to present exculpatory evidence, here, two witnesses' statements, to the grand jury — the evidence must directly negate guilt and be clearly exculpatory — has nothing to do with whether trial counsel rendered deficient performance in failing to call the very same witnesses at trial. Moreover, we have recognized that raising a related issue on direct appeal "does not preclude consideration" of an IAC claim on PCR, where the focus may be on trial counsel's decision making. State v. Allen, 398 N.J. Super. 247, 256–57 (App. Div. 2008).

The PCR judge, however, also considered defendant's IAC claim in this regard on its merits. The judge cited our decision in State v. L.A., 433 N.J. Super. 1 (App. Div. 2013). There, we specifically addressed how a judge considering an IAC claim premised on failure to call a witness should proceed: "a court should consider: '(1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the

evidence actually presented by the prosecution.'" Id. at 16–17 (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996)).

Defendant's argument is that Robinson and Dupree could have testified that he fired no shots, thereby supporting his overall defense, i.e., renunciation of any plot to shoot Logan.[1]  However, the PCR judge noted that Robinson and Dupree "placed [defendant] at the scene" of the fatal shooting, whispering to a "masked person whom they saw commit the shooting."  As the trial judge noted in denying defense counsel's request for a Clawans[2] charge because the State did not produce Robinson and Dupree as witnesses, their statements included significant incriminating evidence.  Moreover, during the trial judge's colloquy with counsel, the State revealed that it no longer knew where either witness was and had no ability to contact them.  Trial counsel could hardly have rendered ineffective assistance under these circumstances.

Earlier in his oral decision, the PCR judge extensively reviewed some of the trial evidence, including defendant's conflicting statements to police — first supplying a false alibi, then admitting to being present, finally admitting to being

---

[1]  Logan, a member of a rival gang, was the intended target of the shooting, not Montgomery.  The judge instructed the jury on the defense of renunciation.

[2]  State v. Clawans, 38 N.J. 162 (1962).

present but giving his gun to a third person and walking away before the shooting occurred. Additionally, there was ample proof in the taped conversations disputing defendant's claim that he left the scene before the shooting. Moreover, ballistic analysis of shells recovered at the scene of the shooting revealed they had been fired from two different weapons. That scientific forensic evidence certainly would have limited any impact of Robinson's and Dupree's testimony since neither one mentioned the presence of a third man at the shooting.

Additionally, although not mentioned by the PCR judge, trial counsel's letter to defendant fully explained why he chose not to call Robinson or Dupree as witnesses, specifically, that he could not be sure exactly what they would say on the witness stand. He presumed that the State might call them in order to place defendant at the scene, but, in the end, the prosecutor chose not to do so. At trial, the State did not call any witnesses present at the Long Branch shootings, including Logan himself. Instead, as trial counsel noted, the State relied upon defendant's own incriminating words that not only placed defendant at the scene but detailed his actual involvement with the shooting pursuant to orders from the gang's leader. Counsel's exercise of trial strategy by not calling

10

Robinson or Dupree was neither an example of deficient performance nor prejudicial under the Strickland/Fritz standard.

The PCR judge also rejected defendant's amorphous claims of inadequate investigation by trial counsel and his lack of adequate consultation with defendant regarding trial strategy. When a defendant claims that his or her trial attorney "inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (citing R. 1:6-6). "[B]ald assertions" of deficient performance are insufficient to support a PCR application. Ibid.; see also State v. Porter, 216 N.J. 343, 356–57 (2013) (reaffirming these principles in evaluating which of a defendant's various PCR claims warranted an evidentiary hearing).

Defendant certified that trial counsel only met with him on two occasions for limited time. He contends this thwarted a fulsome discussion of trial strategy, specifically, his desire to call Robinson and Dupree as witnesses. Our review of the record makes it abundantly clear that trial counsel was prepared, vigorously cross-examined the State's witnesses, and successfully secured an acquittal for defendant on some of the charges in the indictment. For reasons

already stated, if the only example of how trial counsel's alleged limited discussions with defendant demonstrated deficient performance, i.e., Robinson and Dupree did not appear as witnesses, the contention merits no further discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1388-19