**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3623-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARQUISE BROWN,

    Defendant-Appellant.

_____

Submitted December 9, 2025 – Decided March 26, 2026

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 18-11-1008.

Jennifer N. Sellitti, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Wayne Mello, Acting Hudson County Prosecutor, attorney for respondent (Khyzar Hussain, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

Defendant Marquise Brown appeals from a Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

On April 29, 2017, at approximately 4:53 a.m., Jersey City police received a call regarding gunshots fired around 15 Dwight Street. When the police arrived at the location, only numerous shell casings and shattered glass were found in the street. Moments later, the police received a report of a nearby motor vehicle accident. Upon arriving at the accident scene at 5:10 a.m., they learned that a man with two gunshots to his head was in a car with front-end damage stopped in the middle of the intersection of Jersey Avenue and Grand Street near the Jersey City Medical Center. The victim, identified as Amir Pleasant, was taken to the hospital by emergency medical transport, where he was pronounced dead.

In the ensuing police investigation, surveillance video showed a silver two-door Honda Civic stopping in the area roughly thirty minutes before the shooting and again around the time of the shooting. The police later learned the car was owned by Chayana Clark and driven by her live-in boyfriend, William Davis. Surveillance video depicted that, at 4:47 a.m., a man approach Pleasant's

car on Dwight Street and fired four gunshots into the car. Pleasant then drove away before crashing.

Learning that police had "grabbed" Clark and were looking for him, Davis voluntarily went to the Hudson County Prosecutor's Office on May 3, where he told investigators that defendant shot and killed Pleasant. After giving his statement, Davis was arrested and charged with "murder, conspiracy, [and] unlawful possession of a weapon." Defendant was arrested the next day. According to Davis, he did not make a deal with the State in exchange for giving his statement.

Nine months later, on February 8, 2018, Davis gave a second statement to investigators. He identified himself, defendant, Rashad Exum, and Jahi Beatty in surveillance video stills taken from a convenience store they went to right after Pleasant's murder.

On July 11, 2018, Davis pled guilty to second-degree aggravated assault and conspiracy in connection with "a cooperation agreement[,]" in which he agreed to "testify and tell the truth" about Pleasant's killing.

Defendant, Beatty, and Exum were jointly tried before a jury over fourteen days in September 2019. Neither defendant nor his co-defendants testified.

3

Davis was the State's primary witness; his testimony essentially mirrored his statements to investigators.

Davis testified that he was driving Clark's car with defendants Beatty and Exum as passengers when they saw Pleasant, an enemy of theirs, at a gas station. Defendant was not initially with them; through happenstance they saw defendant on the street and stopped to talk to him. Exum asked defendant if he had a gun because they had just seen an "enemy." Defendant responded that he would "go get it," then got in the back seat of the car and directed Davis to drive to a nearby building. When they arrived at their destination, defendant got out of the car, entered the building and came back within five minutes. He returned to the back seat of the car, behind the front passenger's seat. Davis did not see a gun.

Davis then drove back to where they had seen Pleasant. Once they were in the vicinity, Davis heard a gun being "cocked." Exum told defendant "[t]hat's him right there." After Davis stopped the car, defendant exited and, within moments, Davis heard approximately four gunshots. Exum climbed into the back seat. After defendant returned to the car and sat in the front passenger seat, Davis drove away. Davis testified that defendant then stated "[h]e shot him two times in the head. And he shot two more times."

A-3623-23

The jury found defendant guilty of first-degree murder, second-degree possession of a weapon for an unlawful purpose, second-degree unlawful possession of a weapon, and first-degree conspiracy to commit murder. Exum and Beatty were both found not guilty of murder and weapons charges. However, Exum was found guilty of conspiracy to commit murder, and Beatty was found guilty of hindering apprehension or prosecution of another and hindering his own apprehension or prosecution. Defendant was sentenced to life in prison for murder subject to the No Early Release Act. Because of a prior conviction for possession of a firearm, defendant was required to serve at least thirty-five years under the Graves Act.

On direct appeal, we affirmed defendant's conviction and sentence. State v. Brown, No. A-2408-19 (App. Div. March 15, 2022). Our Supreme Court denied petition for certification. State v. Brown, 252 N.J. 602 (2023).

Almost two months later, defendant filed a self-represented PCR petition, which was later amended by assigned counsel. Defendant contended trial counsel provided ineffective assistance by failing to: (1) seek suppression of surveillance video depicting the incorrect time; (2) call Clark to testify that he was not in her car the night of the shooting; (3) offer the "False In One, False in All" jury instruction; (4) object to the playing of Beatty's police interrogation

5

statement after he exculpated defendant from being present on the night of the shooting; (5) seek suppression of the Dwight Street surveillance video and the July 11 video statement; (6) seek a Rule 104 hearing regarding Davis's statemen; (7) call his mother, Kathleen Barry, to testify that he was living with her in Philadelphia on the day of the shooting; and (8) seek severance of his trial with Beatty, because if they were not tried together, Beatty would have testified that defendant was not with him the night of the shooting.

PCR Judge Angelo Servidio denied defendant relief without an evidentiary hearing on May 9, 2024, for reasons set forth in a twenty-one-page opinion. Applying the well-recognized two-prong test to establish ineffectiveness of counsel, Strickland v. Washington, 466 U.S. 668, 687 (1984) and State v. Fritz, 105 N.J. 42, 58 (1987), the judge found there was no prima facie claim that trial counsel's performance was deficient or prejudiced defendant.

Before us, defendant argues in a counseled brief:

POINT ONE

WHERE A PCR JUDGE DOES NOT CONDUCT AN EVIDENTIARY HEARING IN DETERMINING WHETHER A DEFENDANT MADE A PRIMA FACIE SHOWING OF AN INEFFECTIVENESS CLAIM, THIS COURT'S REVIEW IS DE NOVO.

6

POINT TWO

THE PCR JUDGE ERRED WHERE HE
CONCLUDED THAT ANY DEFICIENCY WAS NOT
SO SERIOUS THAT THE TRIAL ATTORNEY
UNDERMINED THE PROPER FUNCTIONING OF
THE ADVERSARIAL PROCESS.

    A. Defense counsel's failure to object to the
admission of the edited version of the video
tape of Beatty's interrogation constitutes a
deficient performance under prevailing
professional norms.

    B. The PCR judge's assessment of whether
defendant suffered prejudice as a result of
his trial attorney's deficient performance
was error.

POINT THREE

RELYING ON THE CO-DEFENDANT'S
CERTIFICATION WITHOUT ASSESSING HIS
CREDIBILITY THROUGH DIRECT AND CROSS-
EXAMINATION, THE PCR JUDGE IMPROPERLY
REJECTED DEFENDANT'S INEFFECTIVENESS
CLAIM THAT HIS TRIAL ATTORNEY'S FAILURE
TO MOVE FOR A SEVERANCE PREJUDICED HIS
RIGHT TO A FAIR TRIAL.

POINT FOUR

THE PCR JUDGE ERRED WHERE HE
SUMMARILY REJECTED THE CERTIFICATION
OF DEFENDANT'S MOTHER AS A BALD
ASSERTION.

Defendant argues in a self-represented supplemental brief:

7

POINT ONE

STATE COURT VIOLATED DEFENDANT MARQUISE BROWN[']S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM, AND [THE] FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS, GUARANTEED BY THE UNITED STATES CONSTITUTION.

    A. Jahi Beatty's video recorded statement.

    B. 22 Dwight Street and 7-Eleven store surveillance videos.

POINT TWO

DEFENDANT'S CLAIMS ARE NOT BARRED PROCEDURALLY FROM BEING RAISED IN THIS PETITION FOR POST[-]CONVICTION RELIEF, UNDER [RULE] 3:22-4[.]

Having reviewed the record in light of the applicable legal standards, we are unpersuaded by defendant's arguments and affirm substantially for the reasons set forth by Judge Servidio in his thoughtful written decision.

As to defendant's claim related to Beatty's redacted interrogation statement to the police that was shown to the jury, the judge found it was without merit. The statement redacted Beatty stating "[defendant] was not in the car when I was in there. Well, from my perspective 'cause I was sleep. That's why I was in the back seat, sleep the whole time" and "I can't say that [defendant]

did the shooting." The judge noted that all the parties had Beatty's unredacted statement before the trial started and the redactions were negotiated by Beatty's counsel and the State without objection by defendant's trial counsel. The judge found there was no apparent reason why no objection was raised. The judge stated:

> The jury still heard Beatty's statements that he was asleep in the car and that the three people in the car were himself, Exum, and Davis. Trial counsel may have agreed to the redaction because it would have created less of a connection between Beatty's statement and [d]efendant. Perhaps trial counsel believed Beatty's statement to police was not reliable and would not help with [d]efendant's defense of attacking Davis's credibility. Ultimately, Beatty's statement that [d]efendant was not present was based on the fact that he was asleep in the back of the car.

The judge held there was no indication trial counsel's failure to object to the redacted statement was deficient performance and prejudicial to defendant in accordance with Strickland/Fritz.

We disagree with defendant's contention that an evidentiary hearing was necessary to have trial counsel explain why he did not object to the admission of the redacted statement. There has been no showing that trial counsel's decision not to object was deficient and prejudicial to defendant, considering the jury was aware that Beatty said defendant was not in the car with him and the

others when Pleasant was murdered.  See State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014) ("To obtain an evidentiary hearing on a PCR petition, a defendant must establish a prima facie case for relief, material issues of disputed fact, and show that an evidentiary hearing is necessary to resolve the claims."); State v. Porter, 216 N.J. 343, 355 (2013) (quoting R. 3:22-10(b)) ("A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'").  Defendant fails to point to any portion of Beatty's excluded statement that would have aided his defense.  Given the record before us, an evidentiary hearing would amount to a fishing expedition, as there was no reasonable indication of a meritorious PCR claim.

Turning to defendant's contention that trial counsel failed to seek severance of his trial from his co-defendants to enable Beatty to testify in his defense, the judge found it was without merit because severance would not have been granted.  The judge found guidance in State v. Sanchez where our Court held that a trial court:

> should sever a joint trial if the court is reasonably certain that (l) the defendant will call his codefendant as a witness in a separate trial; (2) the codefendant, although unwilling to testify at a joint trial, will testify

10

at a separate trial either prior or subsequent to his own trial; and (3) the codefendant's proffered testimony will be credible and substantially exculpatory.

[143 N.J. 273, 293 (1996).]

The judge also recognized that "[s]eparate trials are required only when defendants 'present defenses that are antagonistic at their core.'" State v. Brown, 118 N.J. 595, 606 (1990) (quoting United States v. Berkowitz, 662 F.2d 1127, 1134 (5th Cir. 1981)).

Defendant relies upon Beatty's certification that he would have testified that "[defendant] is innocent of all the charges against him and had no involvement in the shooting . . . because he was not with me on the day that it happened." Beatty added "I told this to the police when they first interviewed me," but "could not testify . . . because of the charges that were pending against me at the time."

The judge determined that Beatty's testimony would have been impeached. Beatty initially told police that he never saw defendant in the car because he was asleep due to being under the influence, in contrast to his certification that defendant was not involved at all and was completely innocent. The judge stressed that the certification did not articulate specific facts to support this assertion. The judge noted further that defendant provided no

11

indication that trial counsel knew of Beatty's desire to testify before or during the trial. Finally, the judge rejected defendant's argument that Beatty and defendant needed separate trials because their defenses were antagonistic. Defendant claimed that, if Beatty had testified that defendant was not in the car that night, Beatty would have inculpated himself by placing himself in the car the assailant exited to shoot and kill Pleasant. However, Beatty's testimony would not have been antagonistic to defendant considering that he already told police he was in the car. Because we agree with the judge that a motion to sever would have been unsuccessful, trial counsel cannot be deemed ineffective for failing to raise a losing argument. See State v. O'Neal, 190 N.J. 601, 618-19 (2007); State v. Worlock, 117 N.J. 596, 625 (1990).

Defendant's remaining counseled argument is that the judge erred in finding there was no prima facie claim of trial counsel infectiveness for not calling his mother to testify as an alibi witness. Defendant certified that trial counsel rejected his request to call her as an alibi witness to "testif[y] that I was with her at the time of the [murder] and therefore could not have committed the crime." Barry certified that "[o]n April 29, 2017, I specifically recall that [defendant] was living with me in Philadelphia at the time. If called as a witness to testify at trial, I would have told this to the jury." Defendant argues that

"[a]lthough Barry did not provide details pertaining to the day in question, she conveyed that [he] did not visit Jersey City other than to gather with family." We are unpersuaded and agree with Judge Servidio's assessment.

We are mindful that our Supreme Court has recognized that an attorney's failure to investigate an alibi defense can be "a serious deficiency that can result in the reversal of a conviction." Porter, 216 N.J. at 353; see also State v. Ways, 180 N.J. 171, 188 (2004) (noting that "evidence that supports a defense, such as alibi, third-party guilt, or a general denial of guilt would be material"). Moreover, "[e]ven a suspicious or questionable affidavit supporting a PCR petition 'must be tested for credibility and cannot be summarily rejected.'" Porter, 216 N.J. at 355 (quoting State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008)).

That said, as the judge acknowledged, viewing Barry's certification in the light most favorable to defendant to determine if a prima facie claim exists, see State v. Preciose, 129 N.J. 451, 462-63 (1992), it does not constitute a credible alibi defense. We agree with the judge that Barry's certification was a bald assertion. See State v. Cummings 321 N.J. Super. 154, 170 (App. Div. 1999) (noting petitioner "must do more than make bald assertions" to establish ineffective assistance of counsel). The judge reasoned "Barry certifying [that]

[d]efendant resided [in Philadelphia] at the time of murder does not demonstrate that he was not involved in the murder or negate the evidence already considered by a jury" and "does not provide specific facts or a demonstration of her personal knowledge of where [d]efendant was the night of the murder." Accordingly, there is no prima facie case that trial counsel was deficient in not calling Barry as an alibi witness.

Lastly, as to defendant's self-represented contentions, they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). Suffice to say, we find them procedurally barred under Rule 3:22-4(a) and substantively barred for the same reasons as explained by Judge Servidio.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division