**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5352-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

PHILIP J. IANUALE,

     Defendant-Appellant.

_____

Submitted November 30, 2020 – Decided August 25, 2021

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 15-06-1163.

Joseph E. Krakora, Public Defender, attorney for appellant (Kimmo Abbasi, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Carey Huff, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Philip J. Ianuale appeals from the April 11, 2019 order of the Law Division denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

In the early morning hours of December 13, 2014, defendant went to the third-floor office of his brother Robert Ianuale to confront him about his drinking habits. The brothers engaged in a physical altercation, which caused Robert[1] to call police.

Three officers responded to the scene: Patrolman Kevin Bennett, Patrolman Gregory Johnson, and Sergeant Michael Ferm. While climbing the stairs, the officers heard yelling from Robert's office. When they entered the office, they saw defendant had cuts on the left side of his face, a small laceration under his left eye, and severe swelling with bruising around his left eye. Robert was shirtless. Officers saw small, bloody cuts on his body. There were broken vodka bottles and liquor on the floor.

Defendant was "very excited" and pacing back and forth. He attempted to leave but was rebuffed by Bennett, who told defendant to remain on the

---

[1] Because defendant and his brother share a surname, we refer to Robert Ianuale by his first name. No disrespect is intended.

A-5352-18

premises. Defendant again attempted to leave. Bennett "grabbed" defendant and told him that he could not leave until "everything was sort[ed] out." The officer shut the door "to reinforce the fact that [defendant] could not leave."

Ferm instructed Bennett to arrest defendant and to not let him leave the office. Bennett told defendant to turn around to be placed under arrest. In response, defendant yelled, "I'm out of here" and "made a break for the door" by "bull rush[ing]" Bennett. As defendant tried to force his way past the officer, Bennett wrapped his arms around him to prevent his escape. Defendant's momentum carried the officer out the door and down one flight of stairs.

Defendant and Bennett struck a wall and came to a momentary stop on the landing at the bottom of the first flight of stairs. Bennett's back was toward the second flight of stairs. Defendant "put his shoulder down" and "pushed through" Bennett, causing the officer to fall down the second flight of stairs backward. Bennett landed on his head and shoulders with defendant on top of him. Defendant then "sprung up right away" and ran down the third flight of stairs. Bennett stood up and attempted to give chase, but paused because he felt dizzy.

Johnson ran downstairs past Bennett and pursued defendant as he left the building. Bennett regained his bearings, continued down the stairs, and exited to the sidewalk. He saw Johnson chasing defendant. Bennett caught up with

3

Johnson, who was trying to wrestle defendant to the ground. Bennett assisted Johnson in subduing and arresting defendant. A search of defendant uncovered marijuana and drug paraphernalia. Bennett was later treated at a hospital for a cut on his head, sore neck and shoulders, and several chipped teeth.

A grand jury indicted defendant, charging him with: (1) third-degree aggravated assault on a police officer, N.J.S.A. 2C:12-1(b)(5)(a); (2) third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3); and (3) fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2). Defendant was also charged by summons with disorderly persons possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1), and disorderly persons possession of drug paraphernalia, N.J.S.A. 2C:36-2.[2]

Prior to trial, defendant and the State entered into two stipulations. The first provided: "On December 13, 2014, between 4:50 and 5:00 a.m. Robert Ianuale called the Keyport Police Department and requested assistance at the third floor [of address of Robert's office]." The second provided: "On or about December 16, 2016, defendant filed a civil lawsuit in federal court against multiple defendants, including Kevin Bennett, Greg Johnson, [and] Michael

---

[2] Defendant also was charged with the disorderly persons simple assault of Robert, N.J.S.A. 2C:12-1(a). That charge was dismissed after trial.

Ferm, requesting monetary damages." Both stipulations were read to the jury, the first at the State's request and the second at defendant's counsel's request.

During Johnson's testimony, defense counsel questioned the officer about whether, as stated in his police report, he took photographs of defendant, Robert, and Bennett depicting their injuries:

> Q:    Did you take a picture of those injuries?
>
> A:    [O]nly in booking. Booking photos.
>
> Q:    So you never took photos of my client, Phil, or Robert as evidence of their injuries?
>
> A:    I did not. . . . I don't believe we did.
>
> Q.    You never provided any photos of my client's (sic) or [his] brother displaying injuries to the prosecutor?
>
> A:    No, not that I recall.
>
> Q:    Did you ever take any photos of Officer Bennett and his injuries?
>
> A:    I don't recall if we did or didn't.
>
> Q:    Do you recall writing a police report for this incident?
>
> A:    Yes, I do.
>
>        . . . .

5 A-5352-18

Q: Do you recall indicating in that police report that you took photos of both Mr. – Phil, Robert and Officer Bennett?

A: No I don't believe that's in there.

. . . .

Q: Does reading [the police report] refresh your memory as to whether you took photos of both parties?

A: Yes, it does.

Q: Did you take photos of all the parties?

A: Yes, I did.

Q: Do you know where those photos are?

A: I do not.

Q: Did you ever give those photos to the prosecutor?

A: I didn't. I myself didn't give anything to the prosecutor.

At the conclusion of the State's case, defendant's counsel moved for an adverse inference charge based on the State's spoliation of the photographs. He argued Johnson testified it was possible the photographs were lost. The trial court denied the motion, finding that while Johnson gave inconsistent testimony about the photographs, he did not testify that they were lost.

6

On January 13, 2017, the court notified counsel that on the previous day of trial, a sheriff's officer informed the court that Juror No. 1 had thanked him for stopping observers in the courtroom from talking during the trial. The juror told the officer that the talking had been distracting.

On January 17, 2017, the court informed counsel that "[a]pparently, Juror [No. 1] heard talking again from the people behind him." Defendant's counsel informed the court that defendant's family was seated in the front row of the gallery behind Juror No. 1. With the agreement of both counsel, the court did not voir dire Juror No. 1 or the other jurors, noting that Juror No. 1 told the officer that the comments he heard were just "chitter chatter" and "not anything specific." The court then blocked off the first two rows of the gallery and instructed all observers in the courtroom to remain quiet during the trial.

The jury found defendant guilty of third-degree aggravated assault on a police officer, and fourth-degree resisting arrest. The jury acquitted defendant of third-degree resisting arrest, but found him guilty of the lesser-included disorderly persons offense of preventing an officer from effecting an arrest, N.J.S.A. 2C:29-2(a)(1). The court subsequently found defendant guilty of the disorderly persons offenses of CDS possession and possession of drug

paraphernalia and sentenced him to an aggregate term of three years of noncustodial probation. Defendant did not file a direct appeal.

On December 5, 2017, defendant filed a petition for PCR.[3] He alleged his trial counsel was ineffective for: (1) entering into the two stipulations over defendant's objections; (2) failing to move for a mistrial based on the State's failure to turn over the photographs; (3) failing to call Robert and an investigator hired by defendant's counsel as witnesses; and (4) failing to seek a voir dire of Juror No. 1 and the remaining jurors. In addition, defendant argued that the trial court erred when it denied his motion for an adverse inference charge. Alternatively, defendant argued that if the photographs had not been lost the State's failure to produce them warranted reversal of his convictions.

The trial court issued an oral opinion denying defendant's petition without an evidentiary hearing. The court held that defendant's claims regarding the trial court's denial of his motion for an adverse inference (if the photographs were lost) and the State's failure to produce the photographs (if the photographs were not lost) are barred by Rule 3:22-4(a)(2) because defendant could have raised those issues in a direct appeal. In addition, the court found that application of

---

[3] Defendant's certification in support of his petition was not filed until January 14, 2019.

the bar to these claims is not a fundamental injustice because defendant could not establish that either the absence of an adverse inference instruction or the failure to produce the photographs played a role in the jury's verdict. The court found defendant could not establish the photographs were lost or, if not lost, exculpatory or material to the charges he faced.

The court also rejected defendant's attempt to cloak the photographs arguments in allegations of ineffective assistance of counsel because it is undisputed that his trial counsel moved for an adverse inference charge. In addition, the court found that although trial counsel did not move to dismiss the charges because of the State's failure to produce the photographs, defendant did not make a prima facie showing that the photographs were exculpatory or material and that counsel's alleged ineffective assistance, if true, was prejudicial.

The court also found defendant's claims relating to the voir dire of Juror No. 1 and the remaining jurors are barred by Rule 3:22-4(a)(2). Defendant's trial counsel was notified of the juror's report of hearing "chitter chatter" from observers in the front row. With the consent of both the State and defendant's counsel, the court did not voir dire Juror No. 1 or the remaining jurors. If defendant disagreed with the court's decision, he could have raised the issue in a direct appeal. In addition, the court found application of the bar to these claims

is not a fundamental injustice because defendant cannot establish that Juror No. 1 heard any substantive comments, shared those comments with other jurors, or that the comments had the potential to influence the jury's verdict.

The court also concluded defendant did not make a prima facie showing of ineffective assistance of counsel. The court found counsel's agreement to the stipulations was a sound strategic decision. In addition, the court concluded defendant could not show how the stipulations prejudiced him, as they did not directly relate to elements of the charges he faced. The court found the stipulation regarding defendant's civil suit may have benefitted him, as it may have suggested the officers acted inappropriately during defendant's arrest.

The court concluded counsel's decision not to call Robert as a witness was also a sound strategic decision because at the time of trial Robert was facing criminal charges and was likely to assert his Fifth Amendment right against self-incrimination. With respect to the investigator not called as a witness, the court found that defendant did not identify testimony the investigator would have provided that could have affected the verdict. As a result, the court concluded defendant did not establish a prima facie claim that the failure to call the investigator constituted ineffective assistance of counsel.

An April 11, 2019 order memorializes the court's decision.

This appeal follows. Defendant raises the following arguments.

POINT ONE

THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING DESPITE THE FACT THAT HE DEMONSTRATED A PRIMA FACIE CASE OF THE INEFFECTIVE ASSISTANCE [OF] COUNSEL AS DEFENSE COUNSEL ENTERED INTO STIPULATIONS WITHOUT DEFENDANT'S CONSENT, FAILED TO MOVE FOR A MISTRIAL BASED ON LOST EVIDENCE BY THE POLICE AND FAILED TO CALL WITNESSES AT TRIAL.

POINT TWO

THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF DESPITE THE FACT THAT DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT FAILED TO GIVE THE JURY A SPO[LI]ATION OF EVIDENCE INSTRUCTION.

POINT THREE

THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF DESPITE THE FACT THAT DEFENDANT WAS DENIED A FAIR TRIAL BY AN IMPARTIAL JURY.

POINT FOUR

THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF ON PROCEDURAL

11

GROUNDS BECAUSE THE ISSUES SET FORTH IN DEFENDANT'S PCR WERE PREMISED ON INTERESTS OF JUSTICE, FUNDAMENTAL INJUSTICE, AND INEFFECTIVE ASSISTANCE OF COUNSEL THAT COULD NOT HAVE BEEN RAISED ON DIRECT APPEAL.

## II.

We begin with the claims found by the trial court to be barred because defendant did not raise them in a direct appeal of his conviction. Rule 3:22-3 provides that a PCR petition "is the exclusive means of challenging a judgment rendered upon conviction of a crime. It is not, however, a substitute for appeal from conviction or for motion incident to the proceedings in the trial court . . . ." In addition, Rule 3:22-4 provides, in relevant part:

> (a) First Petition for Post-Conviction Relief. Any ground for relief not raised in the proceedings resulting in the conviction . . . or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at a hearing finds:
>
> (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or
>
> (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice . . . .
>
> . . . .

12

> A ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence.

"The first exception is only available to a petitioner if he can show that the facts that form the basis for the requested relief could not have been discovered earlier through the exercise of reasonable diligence." State v. Nash, 212 N.J. 518, 546 (2013) (quoting R. 3:22-4(a)). To succeed under the second exception, the petitioner "must show that the error 'played a role in the determination of guilt.'" Id. at 547 (internal quotations omitted). "[D]efendant bears the burden to 'allege specific facts, which, if believed, would demonstrate the likelihood of injustice by a preponderance of the evidence.'" State v. Martini, 187 N.J. 469, 482 (2006) (quoting State v. Mitchell, 126 N.J. 565, 589 (1992)).

Having carefully reviewed the record, we agree with the trial court's conclusion that defendant's claims relating to: (1) the denial of his motion for an adverse inference charge; (2) the State's failure to produce the photographs taken by Johnson, if they were not lost; and (3) the trial court's decision not to voir dire Juror No. 1 or the other jurors are barred by Rule 3:22-4(a). Each of those claims could have been, but were not, raised by defendant in a direct appeal.

Defendant does not allege that any facts supporting these arguments were recently discovered or were unavailable to him during the period in which he could have filed a direct appeal of his convictions.

We also agree with the trial court's determination that application of the bar in Rule 3:22-4(a) to these claims does not constitute a fundamental injustice. When determining whether the spoliation of evidence resulted in denial of a criminal defendant's due process rights, the court must consider: (1) whether there was bad faith or connivance on the part of the government; (2) whether the evidence was sufficiently material to the defense; and (3) whether defendant was prejudiced by the loss or destruction of evidence. State v. Hollander, 201 N.J. Super. 453, 479 (App. Div. 1985); see also United States v. Wise, 221 F.3d 140, 156 (5th Cir. 2000) (holding that an adverse inference charge requires finding of bad faith conduct by the government).

Evidence is material if it possessed an exculpatory value that was apparent before it was destroyed. California v. Trombetta, 467 U.S. 479, 489 (1984). The evidence must be expected to play a significant role in the defense and be of such a nature that the defendant would be unable to obtain comparable evidence by any other reasonably available means. Arizona v. Youngblood, 488

14

U.S. 51, 58 (1988); Trombetta, 467 U.S. at 489; State v. Marshall, 123 N.J. 1, 109 (1991).

As the trial court correctly explained, defendant has not established that the photographs were lost, that they were exculpatory or material, or that the State acted in bad faith. There is nothing in the record suggesting defendant would be granted PCR on these claims if he were permitted to assert them despite not having raised them in a direct appeal.

Additionally, "[a] new trial . . . is not necessary in every instance where it appears an individual juror has been exposed to outside influence." State v. R.D., 169 N.J. 551, 559 (2001). "[A] new trial will be granted where jury misconduct or intrusion of irregular influences into the jury deliberation 'could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge.'" State v. McGuire, 419 N.J. Super. 88, 154 (App. Div. 2011) (quoting State v. Grant, 254 N.J. Super. 571, 583 (App. Div. 1992)). "The test is 'not whether the irregular matter actually influenced the result but whether it had the capacity of doing so.'" State v. Tindell, 417 N.J. Super. 530, 563 (App. Div. 2011) (quoting State v. Scherzer, 301 N.J. Super. 363, 486 (App. Div. 1997)).

A-5352-18

Defendant made no prima facie showing that Juror No. 1 heard specific comments from observers, who appeared to be members of defendant's family, shared those comments with other jurors, or that such comments had the potential to influence the jury's verdict. The record demonstrates that the sheriff's officer told the court that the juror heard only "chitter chatter" and nothing of substance from the observers.

As for defendant's ineffective assistance of counsel claims, under Rule 3:22-2(a), a defendant is entitled to post-conviction relief if there was a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey[.]" "A petitioner must establish the right to such relief by a preponderance of the credible evidence." State v. Preciose, 129 N.J. 451, 459 (1992). "To sustain that burden, specific facts" which "would provide the court with an adequate basis on which to rest its decision" must be articulated. Mitchell, 126 N.J. at 579.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984); State v.

Fritz, 105 N.J. 42, 58 (1987)). To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by Strickland and adopted by our Supreme Court in Fritz. 466 U.S. at 687; 105 N.J. at 58.

Under Strickland, a defendant first must show that his attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness." Id. at 688.

A defendant also must show that counsel's "deficient performance prejudiced the defense[,]" id. at 687, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" id. at 694; accord State v. Nunez-Valdez, 200 N.J. 129, 138-39 (2009). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. Strickland, 466 U.S. at 694.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697; State v. Marshall, 148 N.J. 89, 261 (1997). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing Marshall, 148 N.J. at 157-58). A hearing is required only when: (1) a defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Id. at 355 (quoting R. 3:22-10(b)).

We have reviewed the record in light of these legal principles and agree with the trial court's conclusion that defendant did not make a prima facie showing of ineffective assistance of counsel warranting PCR or an evidentiary hearing.

Trial counsel's decisions to sign the stipulations and to not call Robert and the investigator as witnesses were sound strategic decisions. While defendant

18

disagreed with those decisions, a lack of agreement between an attorney and his client on trial strategy does not constitute ineffective assistance of counsel. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." State v. Allen, 398 N.J. Super. 247, 253-54 (App. Div. 2008) (quoting State v. Arthur, 184 N.J. 307, 319 (2005)).

Moreover, we agree with the trial court's conclusion defendant did not make a prima facie showing he was prejudiced by the stipulations, which did not contain facts damaging to his defense. Similarly, at the time of trial, Robert was facing charges and likely would have invoked his Fifth Amendment right to not testify. Defendant made no showing that the investigator would have provided testimony that would have influenced the jury's verdict.

Finally, we agree defendant did not make a prima facie showing that his counsel was ineffective because he did not move for dismissal of the charges based on the State's failure to produce the photographs. There is nothing in the record establishing that the photographs were exculpatory or material, or that the State acted in bad faith by not producing them. There is, therefore, ample

support for the trial court's conclusion defendant did not make a prima facie showing that a motion for dismissal of the charges would have been successful.

We have carefully considered defendant's remaining arguments and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5352-18