**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0914-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RAMON VEGA, a/k/a
TONY RAMON,

    Defendant-Appellant.

_____

Submitted May 7, 2025 – Decided July 17, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-10-2876.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Raymond Vega appeals from the trial court's October 18, 2023 order denying his application for post-conviction relief (PCR). Based on our review of the record and the applicable legal principles, we affirm.

I.

A.

In 2016, defendant was indicted and initially charged with thirty counts. Following the dismissal of certain charges, defendant was charged with the following twenty-two counts: (1) second-degree conspiracy to distribute a controlled dangerous substance (CDS), N.J.S.A. 2C:5-2; (2) third-degree possession of CDS (cocaine), N.J.S.A. 2C:35-10(a); (3) first-degree possession of CDS with intent to distribute (cocaine), N.J.S.A. 2C:35-5(a)(l), (b)(l); (4) third-degree possession of CDS with intent to distribute near school property (cocaine), N.J.S.A. 2C:35-7(a); (5) second-degree possession of CDS with intent to distribute near public property (cocaine), N.J.S.A. 2C:35-7.l(a); (6) fourth-degree possession of CDS (marijuana), N.J.S.A. 2C:35-10(a); (7) first-degree possession of CDS with intent to distribute (marijuana), N.J.S.A. 2C:35-5(a)(l), (b)(l0)(b); (8) third-degree possession of CDS with intent to distribute near school property (marijuana), N.J.S.A. 2C:35-7(a); (9) second-degree possession of CDS with intent to distribute near public property (marijuana), N.J.S.A.

2C:35-7.l(a); (10) third-degree possession of CDS (ecstasy), N.J.S.A. 2C:35-10(a); (11) second-degree possession of CDS with intent to distribute (ecstasy), N.J.S.A. 2C:35-5(a)(l), (b)(l); (12) third-degree possession of CDS with intent to distribute near school property (ecstasy), N.J.S.A. 2C:35-7(a); (13) second-degree possession of CDS with intent to distribute near public property (ecstasy), N.J.S.A. 2C:35-7.l(a); (14) third-degree possession of CDS (oxycodone), N.J.S.A. 2C:35-10(a); (15) third-degree possession of CDS with intent to distribute (oxycodone), N.J.S.A. 2C:35-5(a)(l), (b)(l); (16) third-degree possession of CDS with intent to distribute near school property (oxycodone), N.J.S.A. 2C:35-7(a); (17) second-degree possession of CDS with intent to distribute near public property (oxycodone), N.J.S.A. 2C:35-7.l(a); (18) fourth-degree possession of drug paraphernalia, N.J.S.A. 2C:36-3; (19) second-degree possession of a firearm while committing a CDS violation (shotgun), N.J.S.A. 2C:39-4.1(a); (20) third-degree possession of a sawed-off shotgun, N.J.S.A. 2C:39-3(b); (21) second-degree possession of a firearm while committing a CDS violation (double-barrel shotgun), N.J.S.A. 2C:39-4.1(a); and (22) fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d).

Defendant was ultimately convicted of counts one through seventeen, and acquitted on the remaining charges. In August 2018, after appropriate mergers,

defendant was sentenced to an extended thirty-two-year term in prison, with a sixteen-year period of parole ineligibility on count three. In July 2022, the court entered a corrected judgment of conviction regarding count three, imposing a flat thirty-two-year prison sentence.[1]

In January 2022, we affirmed defendant's conviction and sentence. State v. Vega, No. A-0681-18 (App. Div. Jan. 19, 2022) (slip op. at 7). The Supreme Court subsequently denied defendant's petition for certification. State v. Vega, 251 N.J. 35 (2022).

In June 2022, defendant filed a PCR petition, and in May 2023, counsel filed a supplemental brief in support of defendant's petition. The PCR court conducted oral argument, and on October 18, 2023, issued an order and accompanying opinion denying defendant's PCR petition. It further denied defendant's request for an evidentiary hearing.

We derive the following facts from the trial record. Following an investigation conducted by the Essex County Sheriff's Office regarding

---

[1] Defendant's sentence was amended to reflect the removal of the mandatory parole disqualifier, consistent with the Attorney General Law Enforcement Directive 2021-4. See Off. of the Att'y Gen., Law Enf't Directive No. 2021-4, Directive Revising Statewide Guidelines Concerning the Waiver of Mandatory Minimum Sentences in Non-Violent Drug Cases Pursuant to N.J.S.A. 2C:35-12 (Apr. 19, 2021).

A-0914-23

narcotics-related activities of defendant and co-defendant Adalberto Garcia, Sergeant Christopher Bozios obtained a search warrant for defendant's residence in Newark and subsequently participated in the search on August 23, 2016. Video surveillance was played for the jury, depicting police arriving at the residence and Sergeant Bozios and another officer running towards a shed behind the residence, where defendant and Garcia were standing. Defendant was holding a black plastic bag, which he handed to Garcia, who in turn threw the bag into the shed. Defendant and Garcia were both arrested. Sergeant Bozios subsequently located three bags of cocaine on the floor of the shed, along with the black bag tossed by Garcia, which contained marijuana, cocaine, oxycodone, and Dibutylone.

Sergeant Bozios testified defendant lived in the basement of the apartment building. On the third floor, police seized two shotguns, a bullet-proof vest, a pair of handcuffs, and ammunition. They further located a black shoebox which contained digital scales, prescription bottles, and rolling paper. Large quantities of marijuana and a large brick wrapped in aluminum foil filled with powder cocaine were retrieved from the third-floor apartment refrigerator.

Police also recovered video surveillance from the residence. This surveillance was played during trial and showed numerous individuals,

including defendant, moving in and out of the driveway and shed in the days leading up to the execution of the search warrant. Sergeant Bozios did not observe defendant entering the third floor of the residence in the videos he reviewed.

Forensic scientist John Yang, an expert for the State, testified the State seized twenty-nine grams of oxycodone, 2,273 grams (or five pounds) of marijuana, 996 grams (or thirty-five ounces) of cocaine, and 997 grams of Dibutylone. Detective Rashaan Johnson of the Essex County Prosecutor's Office testified as an expert in narcotics distribution. He testified regarding various forms of narcotics and the packaging and distribution of narcotics.

B.

The self-represented PCR submission and counselled brief raised numerous claims. We address only those claims relevant to defendant's appeal.

Defendant argued his trial counsel was ineffective for failing to investigate the legal occupancy or tenancy of the third floor, that appellate counsel failed to raise an issue on direct appeal regarding a jury instruction as to the occupancy of the third floor, and that trial counsel was ineffective for failing to argue against aggravating factor nine—the need for deterrence—at sentencing.

6

The PCR court first addressed defendant's argument that trial counsel failed to investigate and call certain witnesses regarding who owned the premises and who the registered tenants were for each apartment. The PCR court was unpersuaded by the argument because it noted, "defendant was acquitted of all charges related to possession of the CDS, paraphernalia, and firearms located in the third-floor apartment. Defendant was found guilty for [the] CDS in the shed and not the CDS in the third-floor apartment." The PCR court further explained, "[t]his shows the jury did not find beyond a reasonable doubt [d]efendant possessed any items in the third-floor apartment." The court concluded the argument was without merit because trial counsel succeeded in raising a reasonable doubt.

Regarding the jury instruction issue, during jury deliberations, the jury asked the court, "[i]s there any proof that [defendant] ha[d] any legal occupancy of the third floor?" Trial counsel argued the court should not merely reinstruct the jury as to the definition of possession, but did not clearly articulate what the instruction should be. The court ultimately instructed the jury that its duty as the finder of fact was to determine whether defendant possessed the items on the third floor based on the evidence presented in the case. The PCR court noted that because defendant was found not guilty of the charges regarding any items

A-0914-23

found in the third-floor apartment, "[a]ppellate counsels' failure to raise this issue was not unreasonable."

The court next addressed defendant's argument that trial counsel was ineffective for failing to argue against aggravating factor nine at the sentencing hearing. The court noted trial counsel "argued multiple possible mitigating factors" and "reasonably argued against the State's proffered aggravating factors." The court concluded, "defendant has failed to establish any reasonable likelihood the sentencing court would have found a mitigating factor, not found, or placed lesser weight on any aggravating factors, or that the court would have sentenced [d]efendant towards the low-end of the extended term range." In short, the court noted it was unconvinced defendant's arguments would have impacted the outcome of the sentencing.

The PCR court concluded, "because [defendant] has failed to establish a prima facie showing of ineffective assistance of counsel[,] there does not exist a 'reasonable likelihood' of success under the Strickland/Fritz[2] test. Accordingly, [defendant] [wa]s not entitled to an evidentiary hearing."

---

[2] Strickland v. Washington, 466 U.S. 668 (1984); State v. Fritz, 105 N.J. 42 (1987).

A-0914-23

II.

Defendant raises the following points on appeal:

POINT I

REVERSAL IS REQUIRED BECAUSE THE PCR COURT'S FINDING THAT THE JURY ACQUITTED THE DEFENDANT OF THE CONTRABAND LOCATED IN THE THIRD-FLOOR APARTMENT WAS IN ERROR.

POINT II

THE DEFENDANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WHERE APPELLATE COUNSEL FAILED TO RAISE ON DIRECT APPEAL THE ISSUE CONCERNING JURY INSTRUCTIONS.

POINT III

THE DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING BECAUSE []HE ESTABLISHED A PRIMA FACIE CASE OF [INEFFECTIVE ASSISTANCE OF COUNSEL] DUE TO TRIAL COUNSEL'S FAILURE TO ARGUE AGAINST AN AGGRAVATING FACTOR, NAMELY THE NEED FOR SPECIFIC DETERRENCE.

We review a PCR court's conclusions of law de novo. State v. Nash, 212 N.J. 518, 540-41 (2013). We must affirm the PCR court's factual findings unless they are not supported by "sufficient credible evidence in the record." Id. at 540. A judge's decision to deny a PCR petition without an evidentiary hearing

9

is reviewed under an abuse of discretion standard; however, we may review the factual inferences and legal conclusions drawn by the court de novo. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)); State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016).

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test:  (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 58 (adopting the Strickland two-prong test in New Jersey).  A defendant must establish both prongs by a preponderance of the evidence.  State v. Gaitan, 209 N.J. 339, 350 (2012).

As to the first prong, the Constitution requires "reasonably effective assistance," so an attorney's performance may not be attacked unless they did not act "within the range of competence demanded of attorneys in criminal cases," and instead "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)) (internal quotation marks omitted).  When assessing the first

Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999) (citing State v. Davis, 116 N.J. 341, 357 (1989)). Thus, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Further, the court must not focus on the defendant's dissatisfaction with "counsel's exercise of judgment during the trial . . . . while ignoring the totality of counsel's performance in the context of the State's evidence of [the] defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006).

For the second prong of the Strickland test, "the defendant must show that the deficient performance prejudiced the defense" because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687, 694. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

11

whose result is reliable."  Id. at 687.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  Marshall, 148 N.J. at 261 (quoting Strickland, 466 U.S. at 697).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697.

A petitioner is not automatically entitled to an evidentiary hearing merely by filing for PCR.  State v. Porter, 216 N.J. 343, 355 (2013); State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).  Rule 3:22-10(b) provides that defendants are entitled to evidentiary hearings on PCR petitions only if:  (1) they establish "a prima facie case in support of [PCR]," (2) "there are material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) "an evidentiary hearing is necessary to resolve the claims for relief."  In order to establish a prima facie case, a "defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits."  Ibid.; see also Marshall, 148 N.J. at 158.  Thus, to obtain an evidentiary hearing on a PCR petition based upon claims of ineffective assistance of counsel, a defendant must

make a showing of both deficient performance and actual prejudice. State v. Preciose, 129 N.J. 451, 463-64 (1992).

Conversely, Rule 3:22-10(e) states

[a] court shall not grant an evidentiary hearing:

(1) if an evidentiary hearing will not aid the court's analysis of the defendant's entitlement to [PCR];

(2) if the defendant's allegations are too vague, conclusory or speculative; or

(3) for the purpose of permitting a defendant to investigate whether additional claims for relief exist for which defendant has not demonstrated a reasonable likelihood of success as required by R[ule] 3:22-10(b).

Thus, "in order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." Cummings, 321 N.J. Super. at 170 (italicization omitted). "[R]ather, the defendant 'must allege facts sufficient to demonstrate counsel's alleged substandard performance.'" State v. Jones, 219 N.J. 298, 312 (2014) (quoting Porter, 216 N.J. at 355).

A-0914-23

A.

Defendant argues the PCR court incorrectly determined defendant's argument that trial counsel failed to ascertain or call as witnesses the owners or registered tenants of the third floor was "baseless when the jury acquitted him of the contraband located therein." Defendant notes there was "distribution weight of cocaine located in the third-floor apartment" and there was "reasonable probability that this issue could have affected the outcome of the case," and defendant had a right to present this evidence at a hearing to support his position. Although trial counsel's strategy at trial was that defendant did not rent or occupy the third-floor apartment, defendant contends "reasonably competent trial counsel would [have] utilize[d] an investigator to pursue this information to support his claim." Defendant notes the jury verdict sheet does not differentiate between the drugs located in the third-floor apartment and those found in the shed.

Defendant argues that by not performing an investigation and calling "key witnesses" regarding who owned or rented the third-floor apartment, he was deprived of "crucial evidence showing that he had no connection to the third-floor apartment," contrary to "the prosecution's claim that he possessed cocaine found in the apartment."

Defense counsel at trial argued in closing that defendant was never seen on the third floor and had no connection to the third floor. Counsel also pointed out that one of the officers had mistakenly indicated that defendant was seen in the video on the third floor. He noted the officer later conceded he made a mistake in one of his reports. Defense counsel also argued the contraband on the third floor was "just not" defendant's, stating "[i]f the State is able to put together some information as to [defendant] being on the third floor, . . . we're waiting for it. Because we didn't hear it in testimony." Co-defendant's counsel also emphasized there was no indication defendant was ever seen on the third floor.

Although we affirm the PCR court's order, we do so for a different reason than those stated by the court. See Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (applying the well-settled principle "that appeals are taken from orders . . . and not from opinions," and that orders may be affirmed for reasons different from those set forth by the trial court (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001))). We part company with the trial court regarding its rationale that the jury did not find that defendant possessed any items in the third-floor apartment and was only "found guilty for [the] CDS in the shed and not the CDS in the third-floor apartment." We conclude a court cannot discern

from the jury verdict alone, in the absence of a specific question, how the jury considered the evidence regarding the cocaine found on the third floor with respect to defendant's conviction. The jury was not asked to make a specific determination as to only the cocaine in the shed alone or from the third floor. It is not the trial court's or this court's province to speculate what the jury considered in reaching its verdict.

"An ineffective assistance of counsel claim may occur when counsel fails to conduct an adequate pre-trial investigation." Porter, 216 N.J. at 352. This is because "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." State v. Chew, 179 N.J. 186, 217 (2004) (quoting State v. Savage, 120 N.J. 594, 618 (1990)).

A PCR petitioner asserting his trial attorney inadequately investigated potential witnesses "must do more than make bald assertions"; rather, he is required to assert facts regarding what "an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Cummings, 321 N.J. Super. at 170. "Even a suspicious or questionable affidavit supporting a PCR petition

'must be tested for credibility and cannot be summarily rejected.'" Porter, 216 N.J. at 355 (quoting State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008)).

Defendant has not presented facts regarding what an investigation would have revealed. He does not identify what witnesses should have been interviewed and what those witnesses would have testified about had they been called. No affidavits or certifications were submitted in support of defendant's PCR application identifying the favorable testimony that would have been revealed had certain witnesses been interviewed. These bald, unsupported, conclusory allegations do not provide a basis for PCR.

B.

Defendant asserts appellate counsel was ineffective for failing "to raise the issue of counsel's request for a more detailed jury instruction" regarding "the jury's question about proof of defendant's legal occupancy of the third-floor apartment." He notes the trial court determined this issue was essentially moot because the jury acquitted defendant of possession of any items.

Claims of ineffective assistance of appellate counsel must assert that errors existed at the trial level that could have been ascertained by appellate counsel's review of the record, but were never raised as issues on appeal. See State v. Echols, 199 N.J. 344, 359-61 (2009). To obtain a new trial based on

ineffective assistance of appellate counsel, it must be established that appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal.  See id. at 361.  Appellate counsel will not be found ineffective if counsel's failure to appeal the issue could not have prejudiced the defendant because the appellate court would have found, either, that no error had occurred or that it was harmless.  State v. Reyes, 140 N.J. 344, 365 (1995); see also State v. Harris, 181 N.J. 391, 499 (2004).

After receiving the jury question, the trial court engaged in the following colloquy with counsel:

> THE COURT:  All right, this is the note.  "Is there any proof that [defendant] has any legal occupancy of the third floor?"; that's the question.
>
> [First Assistant Prosecutor]:  The only evidence is what's in the case, Judge and I think that's the question.  I don't think we can answer that question for them, it's what they saw in the evidence.
>
> [Second Assistant Prosecutor]:  Agreed.
>
>    . . . .
>
> [THE COURT:]  All right, . . . we as the [c]ourt or the litigants, I don't believe can make a determination to the jury of what evidence there is.  That's their job.  What we can do is direct [their] attention to the operable legal definition which is possession.
>
> [First Assistant Prosecutor]:  I agree.

THE COURT:  Counsel?

[First Assistant Prosecutor]:  Judge, I would simply say it's up to your memory and your application of the relevant law.  That's -- I would just put it that way.

[Counsel for co-defendant Garcia]:  Judge, I agree.  I think . . . the applicable question is possession; you're right.  And if you would re-instruct them on possession or just say "you've been instructed to as what the definition of possession is.["]  They have the charge, they don't need an instruction.

[First Assistant Prosecutor]:  "You have been instructed as to what the definition of possession is" is fine for me, Judge.

THE COURT:  [Defendant's counsel]?

[Defendant's counsel]:  I agree.

THE COURT:  All right.  All right we are going to bring up the two alternates.  I intend to do that, let's bring up the two alternates.

After initially agreeing with the court's suggestion as to how to answer the question, defense trial counsel raised an issue:

THE COURT:  All right, we're back on the record. [Defendant's counsel]?

[Defendant's counsel]:  Yeah, my problem is that, that's the jurors province.  As lawyers, you know, we can say that's possession, but they're using the word legal occupancy.  We don't know where the[ir] mind-set is. It's their duty to . . . determine the facts and we have

19

given you the law; okay, and then let them figure it out, they're smart people.

THE COURT: All right, what does the free-floating concept . . . of legal occupancy have in this case. Just the concept of legal occupancy, . . . what significance does that have?

[Defendant's counsel]: The concept of legal occupancy would go toward ownership, would go for control and custody which the Prosecutor is arguing --

THE COURT: Which goes to possession, that's the only operative legal definition that I think reasonably . . . has any logical relevance to it. . . . [I]t is the question of the third floor and so they're looking for some guidance. We are not telling them what the answer is, we can't . . . that's your job. All right, but in performing your duty to apply to facts as you find them to be to the law has been instructed, . . . the [c]ourt has given you a definition of possession and you should apply that definition in conjunction with all the other instructions I gave you.

What . . . they're looking - [defendant's counsel], they're looking to the [c]ourt and to [c]ounsel for some help to do their job. And I don't think we are tilting it one way or the other by responding in that way because that's the only nexus to what legal occupancy means. Who cares who occupied it, it only matters who possessed it at the time of the charge, so if that's your objection, I'm strongly inclined to overrule it.

[Defendant's counsel]: Overrule it.

THE COURT: What does the State think?

[First Assistant Prosecutor]: Judge, I agree with Your Honor in this regard. That is the only question -- that is what this question[] is begging, is what do we deal with the third floor and the only question that is relevant in this consideration is whether or not -- not whether they had a legal lease to the building or the property but whether they had possession of it and therefor the items inside. That's the only issue that's properly before them.

[Second Assistant Prosecutor]: I think [defendant's counsel's] concern[] is that the [c]ourt not say something to the effect of "don't worry about legal occupancy" and the [c]ourt's not going to do that. They're just going to say look at the definition of possession and apply it. That's all he's going to do.

THE COURT: All right, [defendant's counsel] put his objection on the record, . . . I'm inclined to instruct consistently what I indicated to counsel, preserved your objection.

The court then proceeded to give the jury the following response to its question:

THE COURT: All right, the [c]ourt has received a correspondence from the jury, it is marked C-11, received today 12-15-17 at about 12:20. It reads as follows, "Is there any proof that Mr. Vega has any legal occupancy of the third floor?"

Okay. I'll respond to this in a couple of levels. One; you begin "Is there any proof," [t]hat's your job, you're the finders of the facts, you determine what the proofs are -- what the proofs are that exist or don't exist so that's sort of like that google question, don't ask that, all right, so what the proofs are you determine ladies and gentlemen what the proofs are.

A-0914-23

You refer to a legal occupancy. . . . [Y]our duty as jurors as I've told you from the very beginning is to find the facts as you determine them to be -- you find what the proofs are and apply it to the law in the structure that I gave to the . . . jury charges.

[I]n the jury charge the [c]ourt gave you the definition of possession. You will apply . . . it to the facts or absence of the facts to determine the existence of that element of possession. You are to view that, based upon all the evidence and that charge of possession -- review of all the charges that I gave you in the case.

That's my response to your inquiry.

Defendant does not specifically articulate what further instruction the court should have given. Rather, he asserts the court should have asked for "clarification of the question because it could not be determined what specific answer should have been given."

We determine the court appropriately answered the question posed by the jury. If the jury needed further clarification, it could have asked another question. Moreover, defendant does not dispute that the court properly instructed the jury regarding constructive possession in the court's jury charge. Accordingly, we conclude appellate counsel did not render ineffective assistance because we determine that even if this issue was raised on appeal, it would not

22

have constituted a reversible error. Therefore, the failure to argue this issue on appeal could not have prejudiced defendant.

C.

Defendant next argues trial counsel was ineffective for failing to argue against aggravating factor nine, the need to deter further criminal activity, at the sentencing hearing. N.J.S.A. 2C:44-1(a)(9). He argues that counsel should have "acknowledged that while the jury had spoken," and defendant was bound by the verdict, he had a pending trial in the same county for another first-degree charge of distributing CDS that involved a kilogram of cocaine, and he was asserting his right to remain silent. He claims he could not accept responsibility at the time of sentencing without potentially impacting his defense in the other case.

We affirm substantially for the reasons set forth by the PCR court. The "failure to present mitigating evidence or argue for mitigating factors" may support a claim of ineffective assistance of counsel. State v. Hess, 207 N.J. 123, 154 (2011). However, mitigating and aggravating factors must be supported by credible evidence in the record. State v. Dalziel, 182 N.J. 494, 505 (2005). Deterrence remains "one of the most important factors in sentencing," State v. Megargel, 143 N.J. 484, 501 (1996), and the need for deterrence directly

correlates with the nature of the offense, State v. Fuentes, 217 N.J. 57, 79 (2014). Given the serious nature of defendant's charges, it was appropriate for the trial court to consider this factor. We are further satisfied that even if trial counsel had argued against this factor, there is no reason to suggest the trial court would not have still found that it applied under the facts of this case. Moreover, even if the court did not find aggravating factor nine, it still would have found factors three, N.J.S.A. 2C:44-1(a)(3), the risk that defendant will commit another offense, and six, N.J.S.A. 2C:44-1(a)(6), the extent of defendant's prior criminal record and seriousness of his convicted offenses, and that these factors would have preponderated over the non-existing mitigating factors. Therefore, it would not have impacted the outcome of this matter under prong two of Strickland.

To the extent we have not addressed any other arguments raised by defendant, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hawley

Clerk of the Appellate Division

24

A-0914-23